**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

CHAD SMITH and CATHERINE SMITH,

    Plaintiffs,

v.                                        Case No. 6:12-cv-931-Orl-37TBS

SCHOOL BOARD OF BREVARD
COUNTY,

    Defendant.

**ORDER**

This cause is before the Court on the following:

1. Defendant, School Board of Brevard County, Florida's Motion for Summary Judgment, with Incorporated Memorandum of Law (Doc. 59), filed April 5, 2013;

2. Plaintiffs' Response to Defendant's Motion for Summary Judgment (Doc. 62), filed May 13, 2013; and

3. Defendant's Reply in Support of Defendant's Motion for Summary Judgment (Doc. 63), filed May 28, 2013.

Upon consideration, the Court hereby grants Defendant's motion.

**BACKGROUND**[1]

Jane Doe is an intellectually disabled, nonverbal child born on October 5, 2002.

---

[1] The Court derives the factual allegations in this Order from the record and construes them in the light most favorable to Plaintiffs. *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991). The actual facts may be different than those stated here. *See Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002).

(Doc. 59, p. 4; Doc. 62, p. 3.) On April 19, 2011, she was a student in a special needs class at Endeavor Elementary School in Brevard County. (Doc. 59, p. 5; Doc. 62, p. 3.) The class was taught by Jeanette Beninger, who was aided by two assistants, Robert Burns and Jessica Schon. (Doc. 59, Beninger Dep. 8:7–10, 8:20–22.) Sarah Burdge and Lisa Kemmler, two behavioral observers who worked for Defendant, were also in the classroom that day observing students and collecting data. (Doc. 59, Kemmler Dep. 7:11–12, 28:2–8.)

At one point during the day, Jane Doe was intent on getting to Schon, whom she frequently wanted to be near. (Beninger Dep. 43:10–12, 44:9–15.) Schon hid behind a filing cabinet and then a screen to obstruct Jane Doe's view of her in order to redirect Jane Doe's attention. (*Id.* at 43:20–44:4; Doc. 59-2, Burns Dep. 43:6–8.) Jane Doe tried to crawl across the floor to Schon. (Beninger Dep. 43:25–44:2, 44:16–18.) As she was trying to get to Schon, Jane Doe broke a PVC pipe that was part of one of the screens in the classroom. (*Id.* at 45:15–24; Burns Dep. 48:4–16.) Jane Doe's instructors verbally prompted her to sit at a table, and Jane Doe refused to do so. (Kemmler Dep. 28:22–29:8, 50:2–10; Beninger Dep. 54:8–10; Doc. 59-2, Burdge Dep. 23:1–2.)

Burns then picked Jane Doe up off of the floor and "slammed" her into a chair. (Burdge Dep. 26:20–27:1; *see also* Kemmler Dep. 29:12–14.) While she was in the chair, he "shoved her against the table" so that her chest was pressed against the table. (Kemmler Dep. 29:14–17; *see also* Burdge Dep. 24:6–8, 24:18–25.) Mr. Burns then sat in a chair right behind Jane Doe's chair so that she was pinned against the table and could not move.[2] (Kemmler Dep. 29:15–17, 32:22–23.) Jane Doe began crying, making

---

[2] Mr. Burns denies that Jane Doe was pressed up against the table. (Burns Dep. 57:19–58:20.) However, construing the facts in the light most favorable to Plaintiffs, the

2

unhappy sounds, and biting her hand. (*Id.* at 29:23–24; Beninger Dep. 55:6–17; Burdge Dep. 26:3–6.)

The incident lasted for less than five minutes. (Beninger Dep. 58:25–59:3.) Upon witnessing the incident, Kemmler and Burdge left the classroom and reported the incident to the vice-principal. (Burdge Dep. 29:2–8.) The Cocoa Police Department was called. (*Id.* at 29:4.) Burns was charged with child abuse (Doc. 62-2, pp. 1–2), though the charges were later dropped. (Doc. 59-2, Catherine Smith Dep. 51:13–19.) Jane Doe suffered a bruise on her chest that lasted for about a week. (*Id.* at 30:24–25, 62:3–21). Additionally, her behavior worsened following the incident, and she became clingy and angry. (Doc. 59-2, Chad Smith Dep. 36:16–37:24, 39:20–25.)

Plaintiffs Catherine and Chad Smith, Jane Doe's parents, sued the School Board on Jane Doe's behalf under 42 U.S.C. § 1983 for violation of her substantive due process rights and under state law for negligence and negligent hiring, training, and supervision.[3] (Doc. 34.) Defendant moved for summary judgment. (Doc. 59.) Plaintiffs opposed. (Doc. 62.) Defendant replied. (Doc. 63.) This cause is now ripe for the Court's adjudication.

**STANDARDS**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat a motion for

---

Court assumes that she was.
   [3] Plaintiffs also sued Burns and the school principal, but those claims were previously dismissed by the Court. (Doc. 48.)

3

summary judgment, the nonmoving party must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citation omitted).

## DISCUSSION

**1. Section 1983**

To establish municipal liability under § 1983, a plaintiff must show: (1) the existence of a municipal policy or custom; and (2) that the policy or custom caused a constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Here, Plaintiffs allege that Defendant caused a violation of Jane Doe's substantive due process rights. (Doc. 34, ¶¶ 47–61; *see also* Doc. 62, pp. 11–12.) The Due Process Clause of the Fourteenth Amendment protects individuals "against arbitrary action of government." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (citation and internal quotation marks omitted). This protection extends to "a student's right to be free from gratuitous violence or from excessive corporal punishment inflicted by teachers at public schools." *See T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty.*, 610 F.3d 588, 605 (11th Cir. 2010) (Barkett, J., dissenting). However, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense," as the goal of the Due Process Clause is to "prevent government officials from abusing [their] power, or employing it as an instrument of oppression." *Id.* at 846 (citation and internal quotation marks omitted). To be arbitrary in the constitutional sense, a government action must

"shock[] the conscience."[4] *Id.* The U.S. Court of Appeals for the Eleventh Circuit has emphasized that "the Fourteenth Amendment is not a font of tort law that can be used, through section 1983, to convert state tort claims into federal causes of action." *Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir. 2000) (quoting *Lewis*, 523 U.S. at 848) (internal quotation marks omitted). To this end, the lower courts must "remain vigilant in policing the boundaries separating tort law from constitutional law." *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1379 (11th Cir. 2002).

To determine whether an instance of corporal punishment rises to the level of "arbitrary and conscience-shocking behavior," a plaintiff must establish that: "(1) a school official intentionally used an amount of force that was obviously excessive under the circumstances, and (2) the force used presented a reasonably foreseeable risk of serious bodily injury." *Id.* at 1705. Whether the amount of force used is obviously excessive depends on the totality of the circumstances. *Id.* In particular, the Court must examine: "(1) the need for the application of corporal punishment, (2) the relationship between the need and amount of punishment administered, and (3) the extent of the injury inflicted." *Id.*

### a. Need for Corporal Punishment

The Court's consideration of whether there was a need to use force is not an

---

[4] Plaintiffs ask the Court to apply a "deliberate indifference" standard rather than a "shocks the conscience" standard on the ground that Jane Doe was in a "special relationship" with Defendant because of her special needs. (Doc. 62, pp. 8–10.) The Court will not do so. First, the special relationship exception applies only to a state's duty to protect a person in its custody from third parties. *See Worthington v. Elmore Cnty. Bd. of Educ.*, 160 F. App'x 877, 881 (11th Cir. 2005). Here, Burns was a state actor, not a third party. Second, special needs children who are dependent on a school board for safety are not in a custodial or special relationship with the school board. *See id.* Finally, it is well-settled that the "shocks the conscience" standard applies in cases where force is used against special needs students. *See, e.g., T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty.*, 610 F.3d 588, 598 (11th Cir. 2010).

"express[ion] of any judgment as to the desirability of corporal punishment as a policy matter." *Wilson*, 610 F.3d at 600. Rather, it is merely an inquiry into "whether the force is capable of being construed as an attempt to serve pedagogical objectives." *Id.* (citation omitted). Here, Burns's use of force could be construed as serving a pedagogical end, as Jane Doe refused to move off of the floor and sit at a table when instructed to do so. She also had just broken a PVC pipe supporting a cloth screen,[5] so it was reasonable for Burns to intervene to prevent her from hurting herself or causing any further damage or disruption in the classroom. Thus, using physical force to put Jane Doe in her chair "is capable of being construed as an attempt to restore order, maintain discipline, or protect [the student] from self-injurious behavior." *Id.*

### b. Relationship Between Need and Amount of Punishment

The force involved in pinning Jane Doe between her chair and the table was likely more than necessary, though it was not so disproportionate to the need as to be conscience-shocking. *See Hall v. Tawney*, 621 F.2d 607, 613 (requiring that the force be "so disproportionate to the need presented" that it amounts to "a brutal and inhumane abuse of official power literally shocking to the conscience"). It is true that the "conscience-shocking threshold is more quickly reached in cases where the victim is particularly vulnerable to abuse and is otherwise defenseless." *G.C. ex rel. Cosco v.*

---

[5] Plaintiffs contend that Jane Doe was "simply sitting on the floor" when Burns intervened and that Burns's and Beninger's account of Jane Doe breaking a PVC pipe is contradicted by Kemmler and. Burdge. (Doc. 62, pp. 17–18.) This position is not borne out by the evidence. First, Kemmler testified that Jane Doe was being disobedient, as she refused to move despite being told to do so. (Kemmler Dep. 28:25–9:11.) Second, the fact that Kemmler and Burdge did not mention the PVC pipe in their testimony does not "contradict" Burns's and Beninger's account. Even if Jane Doe did not break the PVC pipe—a position which is not supported by any evidence—by all accounts she was still disobedient when she refused to get off of the floor, and thus Burns's use of force indisputably served a pedagogical end.

6

*Sch. Bd. of Seminole Cnty.*, 639 F. Supp. 2d 1295, 1305 (M.D. Fla. 2009) (Antoon, J.). However, "[w]hile a severe disability can render certain forms of punishment more egregious, it can also increase the need for physical intervention, particularly when the child does not respond to verbal instructions." *S.S. v. Princeton House Charter Sch.*, 909 F. Supp. 2d 1348, 1353 (M.D. Fla. 2012) (Presnell, J.).

As a teaching assistant in Jane Doe's classroom, it was Burns's pedagogical and disciplinary prerogative to intervene when Jane Doe failed to follow directions. His use of force, while perhaps ill-considered, was not so disproportionate to the need for the use of force that it shocks the conscience, an extremely high threshold. *See Wilson*, 610 F.3d at 601 (concluding that a teacher's use of force was not obviously excessive in the constitutional sense where the plaintiff student presented evidence that the teacher could have restrained the student in a less harmful manner, but the amount of force used was not "totally unrelated" to the need for the use of force); *see also Peterson v. Baker*, 504 F.3d 1331, 1336 (11th Cir. 2007) (noting that "even intentional wrongs seldom violate the Due Process Clause" and that "conduct . . . *unjustifiable by any government interest* is the sort of official action most likely to rise to the conscience-shocking level" (emphasis added));

### c. Extent of Injury

The extent of the physical injury suffered in this case—a bruise on Jane Doe's chest that lasted for a week—can only be described as minimal, even construed in the light most favorable to Plaintiffs. *In Peterson v. Baker*, the Eleventh Circuit concluded that choking a student until he lost his breath and sustained multiple red and blue bruises and a scratch on his neck was not obviously excessive because the injuries were "minor." 504 F.3d at 1334–35, 1337. By contrast, permanently destroying a

7

student's eye by hitting him with a metal weight lock, *Neal*, 229 F.3d at 1076, and striking a student with a metal cane on the head, ribs, and back, causing a large knot and continuing migraines, *Kirkland ex rel. Jones v. Greene Cnty. Bd. of Educ.*, 347 F.3d 903, 904–05 (11th Cir. 2003), are obviously excessive. The injury in this case is more like *Peterson* than *Neal* and *Kirkland*. Additionally, though Jane Doe suffered psychological injury that manifested as anger and clinginess, such harm is rarely sufficient to establish a constitutional violation. *See Wilson*, 610 F.3d at 601–02; *see also Cosco*, 639 F. Supp. 2d at 1305 ("[N]o court has ever found a psychological injury to meet § 1983's high threshold.") (collecting cases).

"[T]he standard is shock the conscience and totality of the circumstances; and when some reason exists for the use of force, constitutional violations do not arise unless the teacher inflicts serious physical injury upon the student." *Peterson*, 504 F.3d at 1338. The Court does not condone Burns's use of physical force against a vulnerable, disabled child. Nevertheless, given the totality of the circumstances—including the fact that Jane Doe was being disobedient in a special needs classroom where students must be closely managed, and the fact that Jane Doe's injuries were minor—the Court does not find Burns's use of force to shock the conscience; no jury could reasonably conclude that his use of force was obviously excessive in the constitutional sense.

While Burns's use of force likely constituted an assault and battery, the Fourteenth Amendment is not a "font of tort law" that can be used in concert with § 1983 to turn state tort claims into federal causes of action. *See Neal*, 229 F.3d at 1074. This incident is better characterized as an "unwise excess of zeal" than as a "brutal and inhumane abuse of official power literally shocking to the conscience" that was "inspired

by malice and sadism."[6] *See Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980). As such, the Court finds that Jane Doe's constitutional rights have not been violated. Defendant therefore cannot be held liable under § 1983.

### 2. State Law Claims

Because Plaintiffs have no surviving federal claim, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Therefore, the remaining claims are due to be dismissed. Accordingly, Defendant's motion for summary judgment is due to be granted.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant, School Board of Brevard County, Florida's Motion for Summary Judgment, with Incorporated Memorandum of Law (Doc. 59) is **GRANTED**.

2. The Clerk is **DIRECTED** to enter judgment in favor of Defendant and

---

[6] Prior to this incident, Burdge had previously observed Burns engage in other uses of force against students on less than five occasions. (Kemmler Dep. 37:5–16; Burdge Dep. 17:9–15, 43:14–18, 46:12–20.) Neither Burdge nor Kemmler, to whom Burdge reported the events, thought that the prior events constituted child abuse. (Kemmler Dep. 48:9–16; Burdge Dep. 45:3–16.) Beninger testified that she had seen Burns take "similar" actions on about ten previous occasions, but had never seen Burns physically harm a child. (Beninger Dep. 58:2–8, 80:25–81:5, 81:21–82:1.) This event was therefore singular for the level of aggression involved in comparison to prior uses of force which were not perceived as child abuse or as physically harmful. Thus, even construing the facts in the light most favorable to Plaintiffs, this incident is best characterized an unwise excess of zeal rather than an inhumane abuse of power inspired by malice. *Cf. J.V. v. Seminole Cnty. Sch. Bd.*, No. 6:04-cv-1889-Orl-28JGG, 2007 WL 7261470, at *10 (M.D. Fla. Mar. 21, 2007) (Antoon, J.) (denying summary judgment because a jury could conclude that a teacher's actions were inspired by malice where the teacher "persistently exposed [her students] to a hostile, violent, and frightening learning environment" through constant provocations and intentional injuries).

      against Plaintiffs. Plaintiffs shall take nothing on their claims. Defendant is awarded costs.

3.     All remaining deadlines are **TERMINATED**.

4.     The Clerk is **DIRECTED** to close this case.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on July 16, 2013.

*[signature]*

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record